# UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# 3:09cv377-RJC-DCK

| | |
|---|---|
| CGM, LLC, | ) |
|             Plaintiff, | ) |
| v. | ) |
| BELLSOUTH TELECOMMUNICATIONS, INC, AT&T BILLING SOUTHEAST, LLC, f/k/a/ AT&T BILLING SOUTHEAST, INC., and AT&T CORP., | ) ORDER |
|             Defendants. | ) |

**THIS MATTER** is before the Court on defendant BellSouth Telecommunications, Inc.'s ("BellSouth") motion to dismiss (Doc. No. 25), defendants AT&T Billing Southeast, LLC, and AT&T Corporation's jointly filed motion to dismiss (Doc. No. 27), the Magistrate Judge's Memorandum and Recommendation ("M&R") (Doc. No. 46), and the parties' objections. The matter is now ripe for determination.

## I. BACKGROUND

Neither party has objected to the Magistrate Judge's statement of the factual and procedural background of this case other than the last sentence of the Background section of the M&R. The last sentence of the M&R does not affect the Court's determination. The objection by BellSouth (Doc. No. 47) regarding the last sentence of the M&R's Background section proffers much information that, if supported, would make the factual statement in the M&R inaccurate because of developments occurring since the M&R was filed. BellSouth does not support its position with evidence of its assertions, and so Court will not consider this objection. The Court thus adopts in full the facts as set forth in the M&R.

## II. STANDARD OF REVIEW

The Federal Magistrate Act provides that "a district court shall make a de novo determination of those portions of the report or specific proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); Camby v. Davis, 718 F.2d 198, 200 (4th Cir.1983). "By contrast, in the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note). Similarly, de novo review is not required by the statute "when a party makes general or conclusory objections that do not direct the court to a specific error in the magistrate judge's proposed findings and recommendations." Id. Moreover, the statute does not on its face require any review at all of issues that are not the subject of an objection. Thomas v. Arn, 474 U.S. 140, 149 (1985); Camby, 718 F.2d at 200. Nonetheless, a district judge is responsible for the final determination and outcome of the case, and accordingly the Court has conducted a careful review of the Magistrate Judge's M&R.

In its review of a Rule 12(b)(6) motion, "the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." Mylan Labs, Inc. v. Matakari, 7 F.3d 1130, 1134 (4th Cir. 1993). The plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Id. at 563. A complaint attacked by a Rule 12(b)(6) motion to dismiss will survive if it contains enough facts to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Towmbly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual

content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

**III. DISCUSSION**

The Magistrate Judge found CGM lacks standing to bring the present lawsuit. CGM has asserted a violation of 47 U.S.C. § 251(c), which codifies a portion of the Federal Telecommunications Act of 1996, Pub. L. No. 104-104, 110 Stat. 56 (1996) (47 U.S.C. § 151 *et seq.*) (the "1996 Act"). The essence of the M&R is as follows: since the 1996 Act granted rights to specific parties and created a limited framework within which those parties may assert violations of the 1996 Act, and because CGM is not a party with rights under the 1996 Act, CGM has no standing to assert a violation of the 1996 Act.

**A. Standing doctrine**

"Standing jurisprudence contains two strands: Article III standing, which enforces the Constitution's case-or-controversy requirements . . . and prudential standing, which embodies judicially self-imposed limits on the exercise of federal jurisdiction." Elk Grove Unified Sch. Dist. v. Newdow, 542 U.S. 1, 11 (2004). Article III standing requires a showing of three elements. "First, the plaintiff must have suffered an 'injury in fact.'" Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992) (citations omitted). The injury-in-fact element requires "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical."[1] Id. at 560 (internal quotation marks omitted). "Second, there must be a causal connection between the injury and the conduct complained of . . . ." Id. Stated differently, the injury must be "fairly traceable" to the defendant's actions. Id. Finally, "it must be likely, as

---

[1] The term particularized means that "the injury must affect the plaintiff in a personal and individual way." Lujan, 504 U.S. at 561 n.1.

opposed to merely speculative, that the injury will be redressed by a favorable decision." Id. (internal quotation marks omitted). The plaintiff bears the burden of establishing standing. Id.

"[P]rudential standing encompasses 'the general prohibition on a litigant's raising another person's legal rights, the rule barring adjudication of generalized grievances more appropriately addressed in the representative branches, and the requirement that a plaintiff's complaint fall within the zone of interests protected by the law invoked.'" Elk Grove Unified School Dist. v. Newdow, 542 U.S. 1, 12 (2004) (quoting Allen v. Wright, 468 U.S. 737, 751 (1984)) (citations omitted). As the Supreme Court has instructed, "Without such limitations – closely related to Art. III concerns but essentially matters of judicial self-governance – the courts would be called upon to decide abstract questions of wide public significance even though other governmental institutions may be more competent to address the questions and even though judicial intervention may be unnecessary to protect individual rights." Id. (quoting Warth v. Seldin, 422 U.S. 490, 500 (1975)). Unlike Article III limits on standing, Congress may override by statute the prudential standing limitations. See, e.g. Bennett v. Spear, 520 U.S. 154, 167 (1997) ("[U]nlike their constitutional counterparts, [prudential limits] can be modified or abrogated by Congress . . . .").

**B. The Federal Telecommunications Act of 1996**

The 1996 Act introduced competition into local telecommunications markets. The Federal Communications Commission ("FCC") is responsible for regulating the substantive requirements of the 1996 Act. See 47 U.S.C. § 251(d)(1) and 47 U.S.C. § 154. Under the 1996 Act, an incumbent local exchange carrier ("ILEC") must provide network access to requesting competitive local exchange carriers ("CLECs") under the terms of interconnection agreements ("ICAs"). 47 U.S.C. § 251(c). In other words, large telephone companies with existing telecommunications infrastructure must share their networks with smaller competitors. This was intended to promote

4

competition in telecommunication markets. Verizon Commc'ns, Inc. v. F.C.C., 535 U.S. 467, 473 (2002).

The rates, terms and conditions under which a CLEC obtains telecommunications services from an ILEC are governed by an ICA between the CLEC and ILEC. 47 U.S.C. § 251(c)(2). The 1996 Act provides the procedures for negotiation, arbitration, and approval of ICAs. 47 U.S.C § 252. ICAs may be reached through voluntary negotiation or compulsory arbitration. Id. § 252(a)-(b). Any ICA adopted by negotiation or arbitration shall be submitted to the relevant state utilities commission, which approves or rejects the ICA. Id. § 252(e)(1).

Federal district courts have exclusive jurisdiction to review the state commission's determinations relating to ICAs under the 1996 Act. Id. § 252(e)(6) ("In any case in which a State commission makes a determination under this section, any party aggrieved by such determination may bring an action in an appropriate Federal district court to determine whether the agreement or statement meets the requirements of section 251 and this section [252].").

In connection with the duty to make network access available, the 1996 Act also requires ILECs to "offer for resale at wholesale rates any telecommunications service that the carrier provides at retail to subscribers who are not telecommunications carriers." 47 U.S.C. § 251(c)(4). In other words, CLECs may purchase telephone services from the ILEC at a discounted wholesale price and then resell those telephone services to individual customers at retail rates.

The purpose of Title 47 of the Code of Federal Regulations, Chapter I, Subchapter B, Part 51, is to provide rules for the implementation of Sections 251 and 252. 47 C.F.R. § 51.1. Under the implementing regulations, an ILEC's resale duty extends to promotional offerings that last longer than 90 days. 47 C.F.R. § 51.613(a). "With respect to any restrictions on resale not permitted under paragraph (a), an [ILEC] may impose a restriction only if it proves to the state commission that the

5

restriction is reasonable and nondiscriminatory." 47 C.F.R. § 51.613(b).

CGM admits that it is neither a CLEC nor an ILEC, the two types of parties subject to the framework of the 1996 Act. Rather, CGM is a billing agent for numerous CLECs. CGM further admits it is not party to an interconnection agreement ("ICA"). CGM thus concedes what the M&R concludes – that it does not have standing under 47 U.S.C. § 252(e)(6) to assert a claim for a violation of § 251(c)(4). In Article III standing terminology, § 252(e)(6) does not provide CGM with a "legally protected interest" because CGM is not a CLEC or ILEC. CGM objects, however, to the M&R's not articulating in writing why CGM should not succeed on its alternative arguments for standing. CGM maintains that while it does not have standing under § 252(e)(6), its legally protected interest is provided by either Section 401(b) of the Communications Act of 1934 ("1934 Act") or, alternatively, the Declaratory Judgments Act ("DJA").

### C. Whether CGM has standing under § 401(b)

CGM contends it has standing to sue under 47 U.S.C. § 401(b), which codified Section 401(b) of the Communications Act of 1934 (the "1934 Act"). Section 401(b) states:

> If any person fails or neglects to obey any order of the Commission other than for the payment of money, while the same is in effect, the Commission or any party injured thereby . . . may apply to the appropriate district court of the United States for the enforcement of such order. If, after hearing, that court determines that the order was regularly made and duly served, and that the person is in disobedience of the same, the court shall enforce obedience to such order by a writ of injunction or other proper process, mandatory or otherwise, to restrain such person or the officers, agents, or representatives of such person, from further disobedience of such order, or to enjoin upon it or them obedience to the same.

47 U.S.C. § 401(b) (2006). A literal application of this provision, in a vacuum not containing the amendments of the 1996 Act, would look to give CGM standing in this suit. After all, CGM has alleged injury directly stemming from BellSouth's violations of the Act and the regulation found

at 47 C.F.R. § 51.613(b), which may be considered an "order" for purposes of Section 401(b). See, e.g., Chesapeake & Potomac Tel. Co. v. Pub. Serv. Comm'n, 748 F.2d 879, 880-81 (4th Cir. 1984) (vacated and remanded on other grounds); accord Hawaiian Tel. Co. v. Pub. Utils. Comm'n, 827 F.2d 1264, 1271 (9th Cir. 1987). Further, CGM is not seeking money damages, but a declaratory judgment. Therefore, if one does not consider the 1996 Act, then CGM appears to have standing. The Court need not delve into a detailed inquiry on this point, however, because § 401(b) fails to support a claim for a violation of § 251(c) in light of the 1996 Act's framework.

The 1996 Act amended the more general 1934 Act, which contains Section 401(b). The 1996 Act created a limited and specific framework for leveling the playing field between CLECs and ILECs, as well as for settling disputes between them. This framework includes the resale duty imposed by § 251(c)(4), and the mechanism for enforcing that duty, which is contained in § 252(e)(6). As the Seventh Circuit stated in Goldwasser v. Ameritech Corp., in the 1996 Act, Congress "imposed a host of special duties on the ILECs; it entrusted supervision of those duties to the FCC and the state public utility commissions; and it created a system of negotiated agreements through which this would be accomplished." 222 F.3d 390, 399-400 (7th Cir. 2000). As Goldwasser recognized, "The 1996 Act is . . . more specific legislation that must take precedence over the general antitrust laws, where the two are covering precisely the same field." Id. at 401.

> This statement from Goldwasser recognizes a canon of statutory construction that:
>
> when presented with a potential overlap between the broadly sweeping terms of a statute of general application that appear to apply to an entire class, and the narrow but specific terms of a statute that apply to only a subgroup of that class, [courts] avoid conflict between the two by reading the specific as an exception to the general.

ConArt, Inc. v. Hellmuth, Obata + Kassabaum, Inc., 504 F.3d 1208, 1210 (11th Cir. 2007); cf. Landmark Land Co. v. RTC, 973 F.2d 283, 289-90 (4th Cir. 1992) (applying this canon to the

Bankruptcy Code). CGM argues that BellSouth's position is based on the "faulty premise(s) that the 1996 Act stands on its own and/or that it supersedes the 1934 Act." (Doc. No. 48 at 18). As CGM points out, the Supreme Court has noted that "the 1996 Act was adopted, not as a freestanding enactment, but as an amendment to, and hence part of" the 1934 Act. AT&T Corp. v. Iowa Utilities Bd., 525 U.S. 366, 378 n.5 (1999). However, a later-in-time piece of legislation can create limited exceptions to an earlier enactment without completely superseding the earlier enactment. Further, Iowa Utilities involved a question of the FCC's rulemaking authority to carry out the provisions of the 1996 Act. As the defendants correctly point out, the issue decided in Iowa Utilities has no bearing on whether a party without an ICA may sue directly in federal court seeking relief under the resale provisions of Section 251(c)(4) of the1996 Act notwithstanding the 1996 Act's clear provisions to the contrary.

Therefore, § 401(b) does not give CGM a legally protected interest against an ILEC's violation of § 251(c)(4) or 47 C.F.R. § 51.613(b).[2] Without such a legally protected interest, CGM can prove no injury cognizable under Article III. CGM thus has no standing under the Constitution to assert its present claims.

---

[2] Many courts have determined that a party may not use Sections 206 and 207 of the 1934 Act to bring claims for violations of the 1996 Act. See, e.g. Global NAPS, Inc., v. Bell Atl.-New Jersey, Inc., 287 F. Supp. 2d 532 545 (D.N.J. 2003); Intermedia Commc'ns, Inc. v. BellSouth Telecom., Inc., 173 F. Supp. 2d 1282, 1287 (M.D. Fla. 2000); Atlantic Alliance Telecom., Inc. v. Bell Atlantic, No. 99cv4915, 2000 WL 34216867, at *4-5 (E.D.N.Y. Apr. 10, 2000) ("Plaintiffs in other cases arising under the [1996] Act have unsuccessfully invoked jurisdiction under 28 U.S.C. § 1331 and other statutes, and [plaintiff's] attempt to use § 207 is no different."); Supra Telecom. & Info. Sys., Inc. v. BellSouth Telecom., Inc., 2001 U.S. Dist. LEXIS 23816, at *17-18 (S.D. Fla. June 8, 2001) ("To . . . allow complainants to circumvent the jurisdictional scheme would 'jeopardize the entire system of review established by the Act.' . . . If sections 206 and 207 were construed to grant federal courts' jurisdiction over alleged violations of the [1996 Act], the jurisdictional restrictions created by section 252(e)(6) would be irrelevant." (internal citations and quotation marks omitted)). Sections 206 and 207 are analogous to § 401(b), except that §§ 206 and 207 pertain to violations of the 1934 Act in general, while § 401(b) pertains to violations of FCC orders. These cases, while they consider §§ 206 and 207, support the Court's holding regarding § 401(b).

**D. Whether CGM has standing under the Declaratory Judgments Act**

In a final attempt, CGM asserts it has standing under the Declaratory Judgments Act, 28 U.S.C. § 2201 (2006). The Declaratory Judgments Act "is remedial only and is not itself a basis for federal subject matter jurisdiction." Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667, 671-72 (1950). As the DJA states, "In a case of actual controversy within its jurisdiction, any court of the United States, upon the filing of an appropriate pleading, may declare the rights an other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201. "Cases and controversies" under the DJA are determined by the same standard as "cases and controversies" under Article III. Medimmune, Inc. v. Genentech, Inc., 549 U.S. 118, 126-27 (2007). The Court has already determined that there is no case or controversy for Article III purposes, because CGM does not assert a violation of a legally protected interest. Since CGM has failed to establish a case or controversy under Article III, it has likewise failed to establish one under the Declaratory Judgments Act. The DJA does not grant CGM a basis for standing.

**IV. CONCLUSION**

CGM has requested that, should the Court grant the defendants' motions, the Court grant CGM leave to file an amended complaint. CGM asserts it would submit evidence of its authority to bring suit on behalf of its CLEC customers in an amended complaint. These purported CLEC customers did not assert this cause of action and were not joined as plaintiffs, and CGM has been the sole plaintiff in this lawsuit asserting claims for its own purported injury. The Court will not at this stage allow CGM to recraft its claims into what would amount to a completely new lawsuit. CGM's request is **DENIED**.

**IT IS, THEREFORE, ORDERED** that:

1. the defendants' motions to dismiss (Doc. Nos. 25 and 27) are **GRANTED**;

2. CGM's complaint (Doc. No. 1) is **DISMISSED**; and

3. CGM's motion to expedite treatment (Doc. No. 2) is **VACATED** as moot.

**SO ORDERED.**

Signed: May 27, 2010

Robert J. Conrad, Jr.
Chief United States District Judge